FILED by KS D.C.

Sep 9, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __21-60260-CR-WILLIAMS/VALLE__

18 U.S.C. § 371
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

DENISE TROTTA,

        Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

#### Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part A" covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" was a medical insurance program that covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, minor surgical procedures, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

4.     Physicians, clinics, and other health care providers, including laboratories, that provided services to beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

5.     A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

## Cancer Genomic Tests

6.     Cancer genomic ("CGx") testing used DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of cancers in the future. CGx testing was not a method of diagnosing whether an individual presently had cancer.

7. Medicare did not cover diagnostic testing that was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Title 42, United States Code, Section 1395y(a)(1)(A). Except for certain statutory exceptions, Medicare did not cover "examinations performed for a purpose other than treatment or diagnosis of a specific illness, symptoms, complaint or injury." Title 42, Code of Federal Regulations, Section 411.15(a)(1). Among the statutory exceptions covered by Medicare were cancer screening tests such as "screening mammography, colorectal cancer screening tests, screening pelvic exams, [and] prostate cancer screening tests." *Id.*

8. If diagnostic testing was necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, Medicare imposed additional requirements before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided, "All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem." *Id.* "Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." *Id.*

9. Because CGx testing did not diagnose cancer, Medicare only covered such tests in limited circumstances, such as when a beneficiary had cancer and the beneficiary's treating physician deemed such testing necessary for the beneficiary's treatment of that cancer. Medicare did not cover CGx testing for beneficiaries who did not have cancer or lacked symptoms of cancer.

### The Defendant, Related Entities and Relevant Persons

10. Clio Laboratories, LLC ("Clio Laboratories") was a limited liability company formed under the laws of Florida, with a principal place of business in Lawrenceville, Georgia.

3

Clio Laboratories purported to provide diagnostic laboratory services, including CGx testing. Clio Laboratories was enrolled in Medicare as a provider.

11. Performance Laboratories, LLC ("Performance") was a limited liability company formed under the laws of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. Performance purported to provide diagnostic laboratory services, including CGx testing. Performance was enrolled in Medicare as a provider.

12. Lazarus Services, LLC ("Lazarus") was a limited liability company formed under the laws of Delaware, with its principal place of business located in New Orleans, Louisiana. Lazarus purported to provide diagnostic laboratory services, including CGx testing. Lazarus was enrolled in Medicare as a provider.

13. Alpha Medical Consulting Inc. ("Alpha") was a corporation incorporated under the laws of Georgia, with its principal place of business located in Lawrenceville, Georgia. Alpha purported to provide legal, compliance, marketing and operational support to laboratories, including Clio, Performance, and Lazarus, among others.

14. Khalid Satary, a resident of Lawrenceville, Georgia, owned and controlled various diagnostic laboratories, including Clio, Performance, Lazarus, and others, and also owned and controlled Alpha.

15. Defendant **DENISE TROTTA**, a resident of Broward County, Florida, was an employee of Clio between in or around November 2017 through in or around March 2019, and was a Vice President of Alpha between in or around March 2019 through in or around September 2019.

16. Company 1 was a limited liability company formed under the laws of Mississippi, with a principal place of business located in Meridian, Mississippi. Co-Conspirator 1, a resident

4

of Lauderdale County, Mississippi, owned and controlled Company 1.

17. Company 2 was a limited liability company formed under the laws of Florida, with a principal place of business located in Palm Beach County, Florida. Co-Conspirator 2, a resident of Palm Beach County, Florida, owned and controlled Company 2.

## COUNT 1
### Conspiracy to Defraud the United States and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2017, and continuing through in or around September 2019, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**DENISE TROTTA,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Khalid Satary, Co-Conspirator 1, Co-Conspirator 2, and others known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS in its administration and oversight of Medicare; and to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

5

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by: (a) soliciting, receiving, offering, and paying kickbacks and bribes in return for recruiting and referring Medicare beneficiaries to Clio Laboratories, Performance, and Lazarus; (b) submitting and causing the submission of claims to Medicare for CGx tests that Clio Laboratories, Performance, and Lazarus purported to provide to those beneficiaries; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

### Manner and Means

The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **DENISE TROTTA**, Khalid Satary, and other co-conspirators offered and paid kickbacks and bribes to patient recruiters, including Co-Conspirator 1, through Company 1, and Co-Conspirator 2, through Company 2, and others, in exchange for the recruitment and referral of Medicare beneficiaries to Clio Laboratories, Performance, and Lazarus, knowing that Clio Laboratories, Performance, and Lazarus would bill Medicare for CGx tests purportedly provided to the recruited beneficiaries.

5. **DENISE TROTTA** and other co-conspirators at Alpha created and caused to be created sham contracts and other documentation, including invoices, that disguised the kickbacks and bribes as payments for other services, including hourly-based marketing services.

6. **DENISE TROTTA**, Khalid Satary, and other co-conspirators caused Clio Laboratories, Performance, and Lazarus to submit claims to Medicare, for CGx tests that were induced through kickbacks and bribes. As the result of these claims, Medicare made payments to

6

Clio Laboratories in the approximate amount of $16 million, Performance in the approximate amount of $127 million, and Lazarus in the approximate amount of $5.4 million.

7. **DENISE TROTTA** and other co-conspirators used the proceeds of the kickback scheme to benefit themselves and others, and to further the scheme.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1. On or about March 28, 2019, Co-conspirator 1 sent an email to **DENISE TROTTA** attaching a W-9 tax form for Company 1, as well as Company 1's banking information, for the purpose of obtaining a sham marketing contract with Alpha.

2. On or about April 24, 2019, **DENISE TROTTA** forwarded a false and fraudulent invoice from Co-Conspirator 1 to another employee of Alpha, and asked the employee to "make sure this invoice gets taken ca[re] of?" The invoice, which was prepared to disguise the kickback payment that Alpha would be passing on to Co-Conspirator 1, falsely reflected that Company 1 had performed 30 hours of work at the rate of $200 per hour, for a total of $6,000.

3. On or about May 15, 2019, Co-conspirator 2 obtained a DNA sample for a CGx test for Medicare beneficiary E.M., which was signed by a physician.

4. On or about May 29, 2019, **DENISE TROTTA** sent an email to Co-Conspirator 2, attaching a contract designed to disguise the kickback payment that Alpha would pay Company 2. The contract falsely stated that Alpha would pay Company 2 $200 per hour for marketing services.

5. On or about June 6, 2019, Khalid Satary, through Alpha, paid and caused Company 1 to be paid a kickback in the approximate amount of $13,600 in exchange for the recruitment and

referral of Medicare beneficiaries to Clio Laboratories, Performance, and Lazarus for CGx testing.

6. On or about June 20, 2019, Khalid Satary, through Performance, submitted and caused to be submitted approximately $26,052 in claims to Medicare for CGx testing purportedly rendered to beneficiary E.M., of which Medicare paid approximately $9,735 on or about July 12, 2019.

7. On or about July 19, 2019, Khalid Satary, through Alpha, paid and caused Company 2 to be paid a kickback in the approximate amount of $550,000 in exchange for the recruitment and referral of Medicare beneficiaries, including E.M., to Clio Laboratories, Performance, and Lazarus for CGx testing.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 982(a)(7))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **DENISE TROTTA**, has an interest.

2. Upon conviction of a violation of criminal conspiracy to commit a violation of, Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendant **DENISE TROTTA** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

  All pursuant to Title 18, United States Code, Section 982(a)(1) and (a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA, DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
TIMOTHY LOPER
ASSISTANT CHIEF
LESLIE S. GARTHWAITE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

DENISE TROTTA,

          Defendant.        /

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
- [ ] Miami
- [ ] Key West
- [✓] FTL
- [ ] WPB
- [ ] FTP

New defendant(s)  [ ] Yes  [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **No**
   List language and/or dialect _____
4. This case will take __7__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   0 to 5 days   [ ]
   - II   6 to 10 days   [✓]
   - III   11 to 20 days   [ ]
   - IV   21 to 60 days   [ ]
   - V   61 days and over   [ ]

   (Check only one)
   - Petty [ ]
   - Minor [ ]
   - Misdemeanor [ ]
   - Felony [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**
7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
TIMOTHY LOPER
DOJ Trial Attorney
Court ID No.  A5502016

*Penalty Sheet(s) attached

REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     DENISE TROTTA

**Case No:** _____

Count #:  1

Title 18, United States Code, Section 371

Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

*__Max Penalty__: Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**